# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00401-CR

**Ramon Garza Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2006-193, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Ramon Garza, Jr., guilty of the second-degree felony offense of possessing a controlled substance (namely methamphetamine) in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2007), § 481.115(a), (d) (West 2003). The jury assessed punishment at seventeen years' in prison and a $10,000 fine. On appeal, Garza contends that the trial court erred in failing to hold a hearing on his motion for new trial, that the trial court abused its discretion in denying his motion to suppress evidence, and that the evidence was legally insufficient to support the jury's finding that the police had reasonable suspicion to detain him. We affirm the trial court's judgment.

## BACKGROUND

On the night of March 14, 2006, officers Christopher Peltier and John Sullivan of the New Braunfels Police Department were parked in their respective patrol cars on Chestnut Street in

New Braunfels, with Peltier's car facing north and Sullivan's car facing south. Peltier testified that at approximately 11:30 p.m., he observed a truck turn onto Chestnut Street with a defective left brake light. Peltier pointed out the car to Sullivan, who testified that he saw the defective brake light in his rearview mirror, then physically turned around and saw it again. Both officers pursued the vehicle, and Sullivan ultimately caught up to it and initiated a traffic stop. Sullivan testified that as the vehicle turned into the convenience store parking lot where the traffic stop took place, the brake light malfunctioned again. Footage from Sullivan's in-car camera, which he activated after he began pursuing the vehicle, was entered into evidence and played for the jury. After watching the video, Sullivan acknowledged that the brake light appears to work properly two times during the pursuit,[1] but stated that he made the traffic stop based on his personal observation, as well as Peltier's observation, that prior to the activation of the in-car camera, the vehicle's left brake light had failed to illuminate when the brakes were applied.

Sullivan testified that after making the traffic stop, he inspected the vehicle's left brake light, observing that "it appeared to have been in a rear-end collision. The glass had been busted and then taped over with red tape." Sullivan then began to converse with Garza, the driver of the vehicle, and observed a large butane torch on the console. Sullivan testified that based on his training and experience, such torches are often used to smoke methamphetamines or crack cocaine. Garza, who was unable to provide a driver's license or proof of insurance, began to make phone calls to the owner of the vehicle in an attempt to locate proof of insurance. Sullivan testified that during

_____

[1] The video also shows the brake light malfunctioning as the vehicle turned into the convenience store parking lot, as Sullivan described.

2

this time, Garza placed his phone in his right pocket, which tightened Garza's pocket enough that Sullivan was able to see the outline of a small handgun. Sullivan then conducted a pat-down search for officer-safety purposes and found a .22 Magnum revolver on Garza's person. Sullivan placed him under arrest for failure to have proof of insurance and conducted a search incident to the arrest, which produced two packages of methamphetamines and a glass pipe.

The jury convicted Garza of possessing methamphetamine in an amount of four grams or more but less than 200 grams, *see id*. § 481.102(6), § 481.115(a), (d), and assessed punishment at seventeen years' confinement and a $10,000 fine. Garza filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

## STANDARD OF REVIEW

Garza argues on appeal that the trial court erred in failing to hold a hearing on his motion for new trial asserting ineffective assistance of counsel, that the trial court erred in denying his motion to suppress evidence, and that the evidence was legally insufficient to support the jury's finding that the police had reasonable suspicion to detain him.

Whether or not to grant a new trial on the ground of ineffective assistance of counsel lies within the discretion of the trial court. *Reyes v. State*, 849 S.W.2d 812, 813 (Tex. Crim. App. 1993). A trial court abuses its discretion only when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

When reviewing a trial court's decision on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to a trial court's determination of

3

historical facts and reviewing the court's application of search and seizure law de novo. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Where the trial court did not make explicit findings of historical facts, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The district court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281. Where the record does not reflect the trial court's legal theory for denying the motion to suppress evidence, the ruling must be affirmed if it can be upheld on any valid theory of law applicable to the case. *Weide v. State*, 157 S.W.3d 87, 94 (Tex. App.—Austin 2005, pet. ref'd).

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

## DISCUSSION

*Motion for New Trial*

An evidentiary hearing on a motion for new trial is necessary only if the motion and accompanying affidavits raise issues not determinable from the record, upon which the accused could be entitled to relief. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Reyes*,

4

849 S.W.2d at 816. The motion and affidavits "need not establish a *prima facie* case" for a new trial, but must assert reasonable grounds for relief that are not determinable from the record. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

Garza's motion for new trial asserts that he was denied the effective assistance of counsel, alleging that his counsel was deficient in the following ways:

> Counsel did not discuss the full range of options available to the Defendant in dealing with the plea offer made by the State. Counsel recognized that "everything depended on the motion to suppress," yet he failed to discuss the possibility of an early, "dispositive," hearing on the motion followed by a guilty plea with preservation of the issue addressed in the motion for appellate purposes. Had that option been investigated and offered to the Defendant, he would have accepted it.
>
> Counsel failed to request that the Court conduct an early, "dispositive," hearing on the motion to suppress. Without knowing what action the Court would take on the motion sufficiently in advance of the scheduled trial, Counsel denied the Defendant the opportunity to consider the full range of options available to him.
>
> Counsel did not discuss any options other than a jury trial. Given his correct advice to the Defendant that "everything depended on the motion to suppress," Counsel should have advised the Defendant that other options, such as a bench trial on the merits, an open plea to the Court, or a negotiated plea permitting an appeal of the Court's ruling on the motion to suppress were viable possibilities.
>
> Counsel's advice that the Defendant reject the offered plea bargain was because counsel "didn't believe in caps." The offer was that the Defendant would plead "open" to the Court, and that the maximum sentence which could be assessed would be twelve (12) years in the penitentiary. This conduct was deficient because the advice was nonsensical and failed to offer the Defendant any real advice. The offer should have been rejected or accepted based on the possibility of a 12 year sentence being imposed, rather than on counsel's personal attitudes.
>
> Counsel failed to investigate the possibility of a plea bargain after the adverse ruling on the Motion to Suppress. Had counsel pursued a plea bargain, the Defendant would have accepted it had the punishment offered been twenty years or less.

5

While Garza contends that his motion for new trial raises matters that are dependent on the demonstration of facts outside the record, the record reflects otherwise. Prior to voir dire, the trial court stated, "It's my understanding that the district attorney wants to make a record regarding the [plea bargain] offer." Garza was placed under oath, and the following exchange took place:

DEFENSE COUNSEL: Mr. Garza and I met, Judge, last Thursday on the jury docket call back here in the custody area. That would be May 24, '07. I made an entry on my file, "Mr. Soane has offered a 12-year cap." There were some discussions about my client working with law enforcement to do some patriotic things, but since he has been incarcerated he's not been able to do that. As so, therefore, that's kind of off of the table and not a consideration any longer.

. . .

But in any event, we're here for trial today and that has not occurred. So therefore he either enters a plea, I have explained to him, or he goes to trial. And the plea offer is a 12-year cap. I discussed with him what a cap is, that this Court would have discretion—absolute discretion, when a PSI was performed—a Pre-Sentence Investigation report by probation and he would be out on a personal recognizance bond if that were to occur, as Mr. Soane indicates is part of the offer. And he—he would enter—and this Court then could go all the way from probation, in its sentencing that would occur, up to 12 years in prison.

And I've got to say that I have—I'd like to maintain attorney/client confidentiality on my advice to him. But his decision, knowing all of that, is to proceed to trial and not run the risk of the Court determining his punishment. That is my client's decision.

TRIAL COURT: Okay.

| DEFENSE COUNSEL: | Regardless of my recommendations. |
|---|---|
| TRIAL COURT: | I understand. |
| DEFENSE COUNSEL: | Is that correct, Mr. Garza? |
| GARZA: | Yes, sir. |
| TRIAL COURT: | Okay. |
| DEFENSE COUNSEL: | Is there anything that I misstated or left out? |
| GARZA: | No, sir. |

A trial court has discretion to decide a motion for new trial based on affidavits alone, particularly where the affiants have already appeared in the trial court, so that "the trial judge ha[s] already had an opportunity to evaluate the affiants" and is "familiar with the history and the facts of the case." *Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). A trial court's determination under such circumstances is entitled to deference on appeal. *Id.* Garza was the sole affiant for his motion for new trial, and he not only appeared in the trial court prior to filing his affidavit, but appeared specifically to discuss the events that were the basis for his motion for new trial, namely, that his counsel had explained to him the consequences of refusing the plea bargain and proceeding to a jury trial. As a result, we cannot hold that the trial court abused its discretion in overruling Garza's motion without holding a hearing.

Furthermore, even if we were to take the allegations made in the motion for new trial as true, Garza has not demonstrated that reasonable grounds exist that would entitle him to relief. Four out of the five allegations Garza made in his motion were based on counsel's alleged failure to explain or pursue either (1) the possibility of an earlier suppression hearing or (2) various

7

alternatives to a jury trial, in light of counsel's advice that "everything depended on the motion to suppress." Garza explicitly states in both his motion for new trial and the accompanying affidavit that he would have accepted a plea bargain of up to 20 years' incarceration after the motion to suppress was denied. However, the actual sentence imposed by the jury was only 17 years' incarceration. In light of the fact that Garza received a sentence within the range that he avers he would have accepted in a plea bargain *after* the motion to suppress was denied, he cannot now claim that counsel's allegedly deficient conduct related to the motion to suppress sufficiently prejudiced the defense to establish ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that defendant must show that counsel's "deficient performance prejudiced the defense" in order to succeed on claim of ineffective assistance).

As for the sole remaining allegation in the motion for new trial, Garza has similarly failed to show reasonable grounds that would entitle him to relief. Garza alleges that counsel committed deficient conduct by advising him to refuse the plea bargain because counsel "didn't believe in caps." However, unlike the facts of *Reyes*, where the motion for new trial alleged ineffective assistance due to counsel's failure to inform the appellant of a plea bargain offered by the State, 849 S.W.2d at 816, Garza does not allege that his counsel failed to provide him with complete or accurate information. Instead, he merely alleges that he was displeased with the results of counsel's advice, based on counsel's subjective opinion that he "didn't believe in caps." A defendant does not "receive ineffective assistance simply because he relied on his attorneys' professional opinions and unsuccessful trial strategy." *Flores v. State*, 18 S.W.3d 796, 800 (Tex. App.—Austin 2000, no pet.). Therefore, even if we took as true Garza's allegation that

8

counsel advised him to refuse the plea bargain because counsel "didn't believe in caps," Garza has not shown that reasonable grounds exist that would entitle him to relief.

Because we have determined that Garza's motion for new trial failed to raise issues not determinable from the record upon which he could be entitled to relief, we overrule Garza's first issue.

*Motion to Suppress*

In his second issue on appeal, Garza argues that the trial court abused its discretion in denying his motion to suppress because the police did not have reasonable suspicion to justify his detention, and therefore all evidence seized after the traffic stop was inadmissible as the fruit of an unconstitutional seizure.[2] *See Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd) ("[E]vidence obtained as the fruit of an unconstitutional seizure is inadmissible.").

A police officer may stop an automobile when that officer has reasonable suspicion to believe that a traffic violation has occurred. *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Lewis v. State*, 502 S.W.2d 699, 702 (Tex. Crim. App. 1973) (holding that traffic stop based on observation of defective brake light was valid detention). "An officer's suspicion of an alleged traffic violation, however, cannot be based on a mistaken understanding of traffic laws." *Id.* Once a suspect has been lawfully detained for investigation, the officer may conduct a limited search for weapons, as Sullivan did in the present case, where it is reasonably warranted for his safety and the safety of others, even in the absence of

---

[2] The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

probable cause. *Rodriguez v. State*, 975 S.W.2d 667, 675-76 (Tex. App.—Texarkana 1998, pet. ref'd). Sullivan testified that he initially stopped Garza's vehicle based on his observation that the vehicle had a defective brake light. As a result, the motion to suppress turns on whether, at the time he initiated the traffic stop, Officer Sullivan had reasonable suspicion to believe that Garza had committed a traffic violation.

During the hearing on the motion to suppress, both Sullivan and Peltier testified that they had witnessed the brake light malfunction before the in-car camera was activated and Sullivan agreed that the in-car camera video shows the brake light operating properly twice after Sullivan began pursuit. However, Garza acknowledges on appeal that "things do, mysteriously, malfunction and then fix themselves when brought under the scrutiny of human observation," so that a reasonable person could assume that the brake light in question malfunctioned at the time the officers first observed the vehicle, yet later operated properly in front of the camera. Because the trial court is the sole judge of the credibility of the witnesses and their testimony on a motion to suppress, *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002), we may not second-guess the trial court's determination that the police officers' testimony regarding the defective brake light was credible.

Garza argues, however, that even if the officers did observe a defective brake light on the vehicle, the traffic stop was not justified by reasonable suspicion because Garza was not committing a traffic violation under Texas law. It is a violation of the law to operate a motor vehicle with equipment that does not comply with the transportation code. *See* Tex. Transp. Code Ann. § 547.004(a)(2) (West Supp. 2007). Section 547.323 of the transportation code specifies that a car

manufactured or assembled after 1959[3] must be equipped with at least two functioning stoplamps, mounted on the rear of the vehicle.[4]  *Id.* § 547.323 (West 1999).

The video taken from Sullivan's in-car camera reflects that Garza's vehicle was equipped with a third stoplamp, located above the rear window of the cab, and there is no evidence that this third stoplamp malfunctioned on the night of the offense.  Garza contends that because the right stoplamp and the stoplamp on the cab of the truck were both operating properly at all relevant times, he fulfilled the transportation code's requirement of two stoplamps and therefore the officers could not have had reasonable suspicion that he was committing a traffic violation.  We disagree.

Section 547.3215 of the transportation code adopts the federal motor vehicle safety standards, so that a violation of such standards constitutes a violation of the transportation code.  *Id.* § 547.3215 (West 1999) ("[L]ighting, reflective devices, and associated equipment on a vehicle or motor vehicle must comply with the current federal standards in 49 C.F.R. Section 571.108 . . . .").  For vehicles of less than 80 inches in overall width,[5] the federal standards specifically require two stoplamps to be mounted on the rear of the vehicle.  *See* 49 C.F.R. § 571.108, S5.1.1, Tables III, IV.  These stoplamps must be mounted with "one on each side of the vertical centerline, at the same height, and as far apart as practicable."  *Id.* at Table IV.  The federal regulations also require a third stoplamp, described as a "high-mounted stoplamp," to be mounted on the vertical centerline.  *Id.* at

---

[3]  The record reflects that the vehicle Garza was driving on the night of the offense was a 1998 Dodge Ram.

[4]  The transportation code refers to brake lights as "stoplamps."  *See* Tex. Transp. Code Ann. § 547.323(d) (West 1999) ("A stoplamp shall emit a red or amber light, or a color between red and amber, that is . . . displayed when the vehicle service brake is applied.").

[5]  This Court took judicial notice during oral argument, and the parties do not dispute, that a 1998 Dodge Ram is less than 80 inches in overall width.

Tables III, IV. At the hearing on the motion to suppress, the officers testified that they observed Garza driving a vehicle that did not have two stoplamps mounted at the same height, on each side of its vertical centerline. Therefore, because we must defer to the trial court's determination that the officers' testimony was credible, we hold that by driving a vehicle with a defective left brake light, Garza violated the federal motor vehicle safety standards, and by extension, violated Texas Transportation Code section 547.3215.[6]

Garza argues on appeal that the federal motor vehicle safety standards only require that a vehicle be *equipped* with a certain number of stoplamps in certain locations, and that there is no requirement that such stoplamps actually be operable. However, the purpose of the federal standards is described as follows:

> The purpose of this standard is to reduce traffic accidents and deaths and injuries resulting from traffic accidents, by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads so that their presence is perceived and their signals understood, both in daylight and in darkness or other conditions of reduced visibility.

49 C.F.R. § 571.108, S2. Garza's interpretation of the federal regulations—that only the installation of certain lighting equipment is required, without regard to whether such equipment actually operates—is inconsistent with the regulations' stated purpose of "providing adequate illumination of the roadway" and "enhancing the conspicuity of motor vehicles." *Id.* In order to preserve the purpose

---

[6] The Fort Worth court of appeals has also arrived at this conclusion under similar facts. *See Starrin v. State*, No. 02-04-00360-CR, 2005 Tex. App. LEXIS 10268, at *2-3 (Tex. App.—Fort Worth 2005, no pet.) (mem. op., not designated for publication).

of the regulations, we read the federal standards to require that vehicles be equipped with properly functioning stoplamps, rather than merely requiring the existence of stoplamps, defective or not.

In light of the applicable federal regulations, the operation of a vehicle with one functioning stoplamp and no second functioning stoplamp of equal height on the other side of the vehicle's centerline constitutes a violation of the transportation code, provided the vehicle is less than 80 inches in width. Therefore, the trial court did not err in determining that the officers had reasonable suspicion to believe that Garza was violating the transportation code at the time of the traffic stop, or in denying the motion to suppress. Garza's second point of error is overruled.

*Legal Sufficiency*

In Garza's third point of error, he argues that the jury charge was incomplete and improper with regard to the legality of the traffic stop, and that under a hypothetically correct jury charge, the evidence is legally insufficient to support a finding that the traffic stop was based on a violation of the transportation code.

Garza contends that the jury charge was improper because it did not instruct the jury that the "third, middle, stoplamp" mounted on the cab of the truck could fulfill the transportation code's stoplamp requirements. As previously discussed, we have determined that the presence of a functioning stoplamp on one side of the vehicle without a second functioning stoplamp of equal height, and one functioning stoplamp on the vertical centerline of the vehicle does not meet the federal motor vehicle safety standards, which have been incorporated into the transportation code. *See* Tex. Transp. Code Ann. § 547.3215. Therefore, Garza's "third, middle, stoplamp" does not

13

fulfill the requirements of the transportation code and he was not entitled to language in the jury charge to that effect.

Similarly, in light of our previous analysis of the relevant stoplamp requirements for the vehicle in question, we reject Garza's argument that the State failed to carry its burden of proving a violation of the transportation code. The jury was entitled to believe the officers' testimony that Garza's left brake light was defective. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (in conducting legal-sufficiency review, reviewing court must defer to jury's credibility and weight determinations). Because Garza's defective brake light, as testified to by the officers, constituted a violation of the transportation code, we hold that the evidence was legally sufficient to find that the officers had reasonable suspicion to initiate the traffic stop. Garza's third point of error is overruled.

## CONCLUSION

Because we have determined that the trial court did not err in failing to hold a hearing on Garza's motion for new trial, that the trial court did not err in denying his motion to suppress, and that the evidence was legally sufficient to uphold the jury's finding that the police had reasonable suspicion to detain Garza, the judgment of conviction is affirmed.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 24, 2008

Publish

14