In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00150-CR

                                                ______________________________

 

 

                              GERALD DEWAYNE BUTLER,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 36306-A

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Gerald
DeWayne Butler was convicted of aggravated robbery in four separate
prosecutions, for multiple robberies of different victims, occurring on three
different dates.  Those convictions are
all presently before this Court on appeal. 
A fifth robbery involving a shooting was prosecuted earlier, and that
conviction was appealed to this Court. 
(All five robberies occurred during the span of six weeks.)  Our opinion affirming the conviction on the
fifth robbery issued on November 12, 2009.[1]  By agreement with the State and the trial
judge, issues that were litigated in the first prosecution concerning a
pretrial motion to suppress could also be brought forward as issues in his four
current appeals.  

            In
our earlier opinion (among other things), we addressed several issues attacking
the court’s ruling admitting evidence found in Butler’s car after he was
stopped by Longview police for a traffic violation.  Butler claimed that the officer lacked
probable cause to stop the car and thus evidence obtained as a result of the
stop was inadmissible.  We found that
issue to be without merit and overruled the point of error.  

            Butler
also raised a Fourth Amendment claim, arguing that the court erred in
overruling his motion to suppress because the inventory search made of the car
following his arrest was constitutionally unsupportable.  We reviewed the record and concluded that
this argument was not presented to the trial court and thus the issue was not
preserved for our review.

            Butler
further argued, based on alleged Brady[2]
violations of his right to exculpatory evidence, that the court should have
suppressed his confession because FBI cover sheets attached to the two “Advice
of Rights” were not provided to him, and those forms did not reflect that he
was taken to be interviewed at the time stated in connection with the
confession.  We found that he had failed
to show that they were not available to him and that the cover sheets were
neither exculpatory nor material and thus no Brady violation occurred.

            Butler
further argued that his confession should have been suppressed on
constitutional grounds, as further articulated by Article 38.22 of the Texas
Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 2005).  He argued violations
because he was not advised he was being recorded and because he was interviewed
at 2:00 a.m.  We reviewed applicable law,
and the facts as shown by the record, and concluded that coercive acts were not
shown and that the trial court was within the range of its discretion in
deciding to admit the second interview into evidence.

            In
this appeal, Butler was convicted in trial court number 36306-A on his plea of
guilty to the offense of aggravated robbery pursuant to a plea agreement.  The only issues raised on appeal address the
traffic stop and the admission of evidence obtained as a result of that stop.  We will therefore address only those matters
relevant to those issues.

I.          Evidence
Obtained After Traffic Stop

            Butler complains of the admission of
physical evidence found in his car after he was stopped by Longview police for
a traffic violation.  The trial court
overruled Butler’s motion to suppress.

            Butler
claims that the court erred in admitting the evidence because Watson lacked
probable cause to stop the car Butler was driving on December 12, 2007.  Watson testified that on December 12, he had
received a report of a white Chevrolet Caprice with grey doors having been used
in a robbery of a convenience store that morning.  Watson saw a car matching the described
vehicle and followed it.  He saw the
driver of the car make a turn without signaling for 100 feet before the turn.  See
Tex. Transp. Code Ann. § 545.104
(Vernon 1999).  Watson then pulled the
automobile over and discovered that Butler was driving it.  When Butler could produce neither a driver’s
license nor proof of insurance, he was arrested.  See
Tex. Transp. Code Ann.  § 543.001 (Vernon 1999) (“Any peace
officer may arrest without warrant a person found committing a violation of
this subtitle.”); Garcia v. State,
218 S.W.3d 756, 760 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (deputy
authorized to arrest Garcia where deputy observed two traffic violations:  failure to display front license plate and
failure to produce driver’s license). 
Since there was no licensed driver accompanying Butler to whom
possession of the automobile could be delivered, it was impounded.  During an inventory search ancillary to the
impoundment, a pistol used in the shooting that was the subject of the first
appeal was discovered in the trunk.

            In
reviewing a trial court’s ruling on a motion to suppress, appellate courts must
give great deference to the trial court’s findings of historical facts so long
as the record supports those findings.  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  Because the trial
court is the exclusive finder of fact, the appellate court reviews evidence
adduced at the suppression hearing in the light most favorable to the trial
court’s ruling.  Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  Further, we give deference to the trial court’s
rulings on mixed questions of law and of fact when those rulings turn on an
evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  On the other hand, in circumstances where
such rulings do not turn on an evaluation of credibility and demeanor, we
review de novo the trial court’s actions. 
Id. 

            Butler
moved to suppress the evidence found in the vehicle, and other evidence later
found in Butler’s residence, arguing the officer lacked probable cause to
conduct the traffic stop which initiated the automobile search—the results of
which led to the search of the residence. 
At the hearing on his motion for new trial, Butler for the first time
maintained that the lane from which he made a right turn was a right-turn-only
lane; therefore, he posited, no turn signal was required.  At the hearing on his motion for new trial, he
argued that the area in question did not “qualif[y] as an intersection” as
contemplated by the Texas Transportation Code.  
In his appellate brief, Butler argues that a driver is not obligated to
signal a turn while in a turn-only lane. 
In support, he cites broadly to Sections 541.304 (addressing traffic
control), 545.101 (turning at an intersection), and 545.104 (use of turn
signals when signaling a turn) of the Texas Transportation Code.  Upon review of these statutes, we are
unconvinced of Butler’s conclusion and we issue no decision on whether a signal
is required in a dedicated turn lane.  In
support of this argument, Butler cites Trahan
v. State, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.).  Trahan, like Butler, was stopped for failing
to signal a lane change.  However, Trahan
was cited for failing to signal when he was exiting the freeway.  The appellate court pointed out that there
was no evidence in the record that Trahan turned or changed lanes in order to
exit the freeway.  According to the
opinion, the arresting officer only testified that he stopped Trahan for
failing to signal his exit from the freeway. 
The court of appeals rejected the State’s proposition that such a
movement necessarily involved a turn. 
Refusing to assume facts not in evidence, the Trahan court found the
traffic stop unjustified.  Id.  

            Here,
we first note that we defer to the trial court’s evaluation of the credibility
of Butler’s testimony that there was a sign indicating a turn-only lane.  During the hearing on the motion for new
trial, Butler’s counsel asked him if there was “a designated right-turn lane.”  Butler responded that, “It was like a
turnoff.”  Butler agreed with his
attorney’s questions, that “there were big arrows pointing this way to the
right in that lane,” and a sign reading “right lane right turn only.”  We have also reviewed the drawing done by
Butler’s counsel at the hearing on the motion for new trial; it suggests a lane
that veers to the right for turning traffic. 
At the suppression hearing, during trial, Watson said he stopped Butler
for failing to signal his intent to turn for 100 feet before the turn, and
Watson was not recalled for the hearing on the motion for new trial.  Butler testified, though, that he did not
signal to get into the alleged turn lane and he could not recall if he signaled
his intent to turn once he had gotten into the supposed turn lane.  

            We
express no opinion on Butler’s reading of Trahan
because we do not find its reasoning controlling here.  The evidence that supports Butler’s assertion
that he was in a lane which excused his obligation to signal his turn is
scant.  Of greater relevance and
importance is Watson’s testimony that he saw what he believed to be a
violation:  failure to signal a turn for
the requisite 100 feet before the turn is negotiated.  If a peace officer has a reasonable basis for
suspecting that a person has committed a traffic offense, he may legally
initiate a traffic stop.  Green v. State, 93 S.W.3d 541, 544 (Tex.
App.—Texarkana 2002, pet. ref’d); Tex.
Dep’t of Pub. Safety v. Fisher, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001,
no pet.).  The United States Supreme
Court has held that a traffic stop will be deemed valid as long as a reasonable
officer in the same circumstances could have stopped the car for the suspected
offense, even where there might have also been an ulterior motive in actually
making the stop.  Whren v. United States, 517 U.S. 806, 809 (1996).  

            The
State is not required to prove that the individual actually committed a traffic
violation, but only that the officer reasonably believed a violation was in
progress.  Green, 93 S.W.3d at 545; Fisher,
56 S.W.3d at 163.  Therefore, “[i]n
assessing whether the intrusion was reasonable, an objective standard is
utilized:  would the facts available to
the officer at the moment of the seizure or search warrant a man of reasonable
caution in the belief that the action taken was appropriate.”  Davis
v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).  

            Counsel,
having had the opportunity to review our reasoning in the prior opinion, has
fine-tuned his argument in this appeal. 
He now argues that we should reconsider our ruling because Trahan and the other cases cited
analyzed situations where the question of a “pretext” stop came into
review.  He suggests that those cases
involve factual disputes about whether a particular action was taken—but which
(if taken) was violative of a criminal statute. 
In those cases, he agrees, a court could find the requisite probable
cause.  In contrast, he argues that in
this case, because the evidence showed that the action taken by Butler did not
violate any Transportation Code requirements, the officer could not have had
the requisite “probable cause to believe that a traffic violation has occurred.”
 Whren,
517 U.S. at 810.  He argues that it is
simply not allowable or constitutional for a stop to be made for an action that
is not an offense.  

            That
understanding of the law finds support both in state and federal cases.  As we previously pointed out, whether an
officer has reasonable suspicion is evaluated from an objective perspective.  Id.
at 806; United States v. Lopez-Valdez,
178 F.3d 282, 288 (5th Cir. 1999); Aviles
v. State, 23 S.W.3d 74, 77 (Tex. App.––Houston [14th Dist.] 2000, pet.
ref’d).  In other words, looking at the
facts available to the officer at the moment of the investigation, would a
person of reasonable caution believe that a traffic violation occurred.  Goudeau
v. State, 209 S.W.3d 713, 716 (Tex. App.––Houston [14th Dist.] 2006, no
pet.); Aviles, 23 S.W.3d at 77; see Lopez-Valdez,
178 F.3d at 288.  An officer’s suspicion
of an alleged traffic violation, however, cannot be based on a mistaken
understanding of traffic laws.  United States v. Granado, 302 F.3d 421,
423 (5th Cir. 2002); Goudeau v. State,
209 S.W.3d at 716.[3]  An officer’s honest, but mistaken,
understanding of the traffic law which prompted his stop is not an exception to
the reasonable suspicion requirement.  Goudeau, 209 S.W.3d at 716; see United States v. Miller, 146 F.3d 274,
279 (5th Cir. 1998); United States v.
McDonald, 453 F.3d 958 (7th Cir. 2006) (applying Illinois state law––a
traffic stop based on an act that was not a traffic violation); Lopez-Valdez, 178 F.3d at 289; Garza v. State, 261 S.W.3d 361, 368 (Tex.
App.—Austin 2008, pet. ref’d), cert.
denied, 130 S.Ct. 123 (2009).[4]

            In
this instance, however, as we have previously pointed out, this argument was
not presented to the trial court until a hearing on Butler’s motion for new
trial.  An appellate court may not
reverse a trial court’s ruling on any theory or basis that might have been
applicable to the case, but was not timely raised.  Martinez v. State, 91 S.W.3d 331, 336
(Tex. Crim. App. 2002).  The question is
whether the complaint that the party is now making on appeal was timely brought
to the trial court’s attention.  Tex. R. App. P. 33.1; Tex. R. Evid. 103; Martinez, 91 S.W.3d at 336.  In
order to be timely, this argument would have had to be made prior to the
introduction of the evidence at bar.  In
this case, it was not raised until the hearing on motion for new trial.  Thus, this issue has not been preserved for
our review.  

            We
overrule the point of error.  

II.        Fourth Amendment Claim
Not Preserved 

            Butler
has also argued that our conclusion that the inventory search issue was waived
was incorrect.  The contention is based
upon the Fourth Amendment guarantee of “the right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures.”  U.S. Const. amend. IV. 
Butler claims the motion to suppress should have been granted because
the search of his vehicle was a violation of his Fourth Amendment right to be
protected against unreasonable searches. 
Specifically, Butler claims that when the police conducted an inventory
of his automobile after he was arrested, such an inventory ran afoul of his
Fourth Amendment protections.  We held in
our prior opinion that the constitutional claim was waived because Butler never
argued to the trial court that the inventory was improper as a violation of his
Fourth Amendment rights.  

            In
order for a complaint to be presented on appeal, a timely request, objection,
or motion must have been made to the trial court stating the grounds for the
ruling “with sufficient specificity to make the trial court aware of the
complaint.”  Tex. R. App. P. 33.1(a)(1)(A).  As we pointed out in our initial opinion,
Butler’s written motion to suppress and his arguments at the suppression
hearing and the hearing on his motion for new trial made no complaint about the
inventory search of his car.  

            Butler
now argues that we should reconsider that decision because he broached the
matter in his motion for new trial.  For
the reasons stated above, we likewise conclude here that such a late request
does not adequately present the issue to the trial court at a time during which
he could take effectual action thereon, and thus does not preserve the issue
for appellate review.

            Butler
also reiterates his contention that his pretrial “motion to suppress arrest and
search” would preserve his present complaint for review.  We disagree. 
It is a request to suppress that focuses solely upon a search of the
vehicle pursuant to his arrest.  So far
as any specificity of argument can be gleaned, it is directed at the alleged
failure of probable cause for the underlying arrest, thus tainting the search
of the vehicle.  Further, there is no
attack on the admissibility of the evidence based on a claim that the inventory
search or search following impoundment was unlawful, even by implication, in
the trial of the case.  We reiterate—a
motion or complaint must be sufficiently specific to explain to the trial court
what that complaint is.  It is not clear
from the motion, and was not otherwise presented to the trial court in a timely
fashion.   

            Butler
has not preserved this issue for appeal. 
See Tex. R. App. P. 33.1.  Cf. Goudeau, 209 S.W.3d at 721 (where
appellant did not complain about inventory search of vehicle in suppression
motion or hearing, but raised argument for the first time on appeal, issue not
preserved).  We overrule the point of
error.  

III.       No Error in Failing to
Suppress Butler’s Confession

            A.        Alleged
Brady Violation

            Butler
next contends that the trial court should have suppressed the confession (which
he denies he made) he gave to law enforcement. 
Butler first claims that the State somehow violated Butler’s right to
exculpatory evidence as articulated in Brady.  Butler did not file a motion to suppress, but
rather a motion attacking the voluntariness of any admission or
confession.  The trial court conducted a
pretrial hearing on this motion; at the end of the hearing, the trial court
said that it would take the matter under advisement, watch the video interview,
and listen to the audio recording, and then make a ruling.  Butler also argued and presented evidence in
support of this motion at the hearing on his motion for new trial.   

            Under
Brady, to ensure the accused a fair
trial, a prosecutor has an affirmative duty under the Due Process Clause of the
Fourteenth Amendment to disclose to the accused all exculpatory or impeachment
evidence, regardless of the good faith or bad faith of the prosecution, which
is favorable to the defendant and is material to either guilt or
punishment.  Id. at 87.  A due process
violation occurs if (1) the prosecutor fails to disclose evidence that is (2)
favorable to the defendant and (3) material.  Wyatt v.
State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); Franks v. State, 90 S.W.3d 771, 796 (Tex. App.––Fort Worth 2002, no
pet.).  Evidence is material if there is
a reasonable probability that had the evidence been disclosed, the outcome of
the trial would have been different.  Hampton v. State, 86 S.W.3d 603, 612
(Tex. Crim. App. 2002).  Under Brady, the defendant bears the burden of
showing that in light of all the evidence, it is reasonably probable the
outcome of the trial would have been different had the prosecutor made a timely
disclosure.  Id.  The mere possibility
that an item of undisclosed information might have helped the defense, or might
have affected the outcome of the trial, does not establish materiality in the
constitutional sense.  Id.

            Butler’s
argument that his rights under Brady
were violated centers on exhibits he introduced at the hearing on the motion
for new trial.  Two exhibits were the two
“Advice of Rights” forms introduced by the State at trial, one from each
interview given by Butler.  However,
attached to each form that Butler introduced at the hearing on his motion for
new trial is what amounts to an FBI cover sheet; each one summarizes the
interview which followed the particular “Rights” form and lists information
such as the date of investigation; “Date dictated”; and “Date of transcription”
(it does not appear that any transcripts were produced at trial). 

            Butler
also referenced testimony from Rodney Burns, Gregg County Jail Administrator,
and records which document the movement of inmates within the jail.  The heart of Butler’s complaint is that these
exhibits are inconsistent with the testimony of the law enforcement officers
who conducted the two interviews with Butler. 
Butler claims that the forms which show an inmate being moved to different
locations do not reflect that Butler was taken from a cell to be interviewed by
Carruth and Davis at 2:00 a.m. December 13. 
However, the records also do not indicate Butler being taken out of a
cell for the interview early in the afternoon of December 12, the interview
Butler admits giving.  Further, Burns
testified that the record being reviewed would normally not indicate when a
prisoner was questioned by law enforcement. 
Burns said an “inmate transfer” form would be used to indicate a
prisoner being transported for purposes of questioning, but Burns did not find
such a form in Butler’s file.  

            Next,
Butler complains about inconsistencies in what we have called the FBI cover
sheets attached to the two “Advice of Rights” forms.  The form pertaining to the interview given
the afternoon of December 12, the video recorded interview, says “[t]he details
[of the interview] are provided in the audio recording.”  This is inconsistent with the fact that the
interview was the subject of a video recording, argues Butler.  Regarding the interview done about 2:00 a.m.
December 13, Davis acknowledged he did not tell Butler he was recording the
interview.   However, the cover sheet for
the “Advice of Rights” form pertaining to the second interview states, “The
details of the robberies was consensually recorded by Detective Davis.” 

            In
our earlier opinion, we stated that we disagreed with Butler’s claim that the
cover sheets were exculpatory and material—stating that at most, they revealed
some inconsistent record keeping.  In
this appeal, Butler takes the position that this is an inadequate explanation,
because they were not disclosed, and “are ‘material’ as that term has been
historically defined and used.”

            As
in the prior appeal, Butler asserts that the forms were material to the
voluntariness of his second statement. 
But voluntariness is a matter of law for the trial court to decide.  Tex.
Code Crim. Proc. Ann. art. 38.22, § 6. 
In making that determination, the trial court could compare the voice on
the two recordings; the court could evaluate the credibility of Carruth when he
identified Butler as the individual he interviewed in the two sessions.  Davis also identified Butler as the person he
interviewed in the late-night session; Davis also said that he knew Butler over
Davis’s several years in law enforcement in Longview.  These identifications were given before the
trial court with Butler in the courtroom at the pretrial hearing.  Carruth and Davis similarly identified Butler
during trial.  Butler does not suggest
that the jail records and FBI cover sheets were not available to him before
trial or that the State in any way withheld them.  Further, we do not see that if Butler had
this information and presented it to the jury, it would have made an acquittal
more likely.  See Ex parte Mitchell, 853 S.W.2d 1, 4 (Tex. Crim. App. 1993)
(evidence favorable “if disclosed and used effectively . . . [it] may make the
difference between conviction and acquittal”). 


            Assuming,
arguendo, that this evidence was withheld, Butler would then have been required
to show that it was material; that is, “there is a reasonable probability that,
had the evidence been disclosed to the defense, the outcome of the proceeding
would have been different.”  Lagrone v. State, 942 S.W.2d 602, 615
(Tex. Crim. App. 1997) (citation omitted). 
We have re-examined the issue, but find nothing to sway us from our
prior conclusion—the evidence was not exculpatory as the term is understood
under Brady—and was not improperly
withheld.  We also maintain our prior
holding that the evidence was not shown to be material.  No Brady
violation occurred here.   

            B.        No
Constitutional Violation Shown 

            As
a second reason urging that his confession should have been suppressed, Butler
claims use of the recorded statement, where he was not advised he was being
recorded, and officers interviewed him at 2:00 a.m., violated his
constitutional rights.  We disagree. 

            As
detailed above, Butler was arrested around midday December 12, 2007.  Early that afternoon, he was interviewed for
at least two hours by Carruth and Lair. 
In that interview, Butler first asserted that his only crime was driving
without a driver’s license; he then tells the officers he had let the robbers
borrow his car.  Incidentally, throughout
the afternoon interview, he speaks repeatedly of the automobile in terms of it
belonging to him; only when he took the stand at trial did Butler claim that he
had borrowed the car and that he had no access to the trunk.  Later in the afternoon of December 12, law enforcement
officers went to a residence (the duplex next to and in the same building where
Butler said he lived).  Although the
officers found significant evidence tying the inhabitants of the duplex to
several aggravated robberies (including the one for which Butler was on trial
here), no evidence of extraneous offenses was admitted in this trial.  Carruth testified that after searching the
duplex and interviewing other suspects, he and Davis went to the jail to speak
with Butler again.  During that
interview, the officers can be heard asking Butler if he had slept, and the
officers offered him a piece of pie and a soda. 
There is no indication the officers roused Butler in the middle of the
night in an effort to disorient him. 
This Court has been supplied the full unredacted interview and we hear
nothing indicating coercive interview tactics or anything suggesting that
Butler gave his confession under compulsion. 
Rather, Butler can be heard sobbing during parts of his confession, but
that is only after he initially continued to deny involvement.  Later in the interview, Butler regains his
composure as he details his participation in multiple robberies. 

            Butler
acknowledges that the current statute controlling defendants’ statements no
longer requires a suspect be advised that a statement is being recorded.  Cf.
Tex. Code Crim. Proc. Ann. art.
38.22.  As far as Butler’s argument that
notwithstanding the statement’s compliance with Texas law, the circumstances of
the statement still render it unconstitutional, a sister court has provided a
thoughtful and detailed examination of how the current Article 38.22 satisfies
constitutional muster.  See Flemming v. State, 949 S.W.2d 876, 879
(Tex. App.––Houston [14th Dist.] 1997, no pet.):  

Both the federal and Texas constitutions provide
that a person may not be “compelled” to give testimony against himself.  Criminal defendants, therefore, are
constitutionally protected only from compulsory self-incrimination.  Police, therefore, may not exert physical or
mental compulsion to obtain a statement. 
Physical compulsion includes physical torture or extended deprivation of
food and water.  Mental compulsion
includes the more subtle force associated with offering a defendant two
choices, i.e., to give a statement or face an improper and unwarranted penalty,
punishment, or detriment.  While a
suspect may knowingly, voluntarily, and intelligently waive a constitutional
right, physical or mental compulsion may remove the element of voluntariness
from a defendant’s decision to incriminate himself.  The waiver, therefore, must be voluntary in
the sense that it is the product of a free and deliberate choice rather than
intimidation, coercion or deception.

 

Id. (citations omitted) (footnote omitted).  In Flemming,
the defendant admitted, in a recorded statement, that he had entered the
complainant’s home but denied sexually assaulting her.  The interviewing detective turned off the
tape recorder, but continued talking to Flemming.  Flemming then admitted to the sexual assault,
but said he did not want to have anyone make a recording of his admission.  The detective activated a hidden recording
device and Flemming again stated he had sex with the victim.  Id.
at 878.  The court of appeals found that
while the detective deceived Flemming, Flemming’s ignorance of the recording “could
hardly have compelled him to confess. 
The deception employed by Detective Bigley was not coercive, nor could
it have overborne appellant’s will.”  Id. at 879.  We find nothing in the record to suggest that
Butler was compelled to make the statements against his interest.[5]  Error has not been shown.

            As
a final point, we note that a trial court’s admission or exclusion of evidence
is reviewed for an abuse of discretion.  Oprean v. State, 201 S.W.3d 724, 726
(Tex. Crim. App. 2006); Montgomery v.
State, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990).  We will not reverse a trial court whose
ruling was within the “zone of reasonable disagreement.”  Montgomery,
810 S.W.2d at 391 (op. on reh’g).  The
trial court was able to review the two interviews alleged to have been given by
Butler and compare the signatures on the two “Advice of Rights” forms.  We find no abuse of discretion in the
admission of the second interview.  

            We
affirm the judgment of the trial court. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July
6, 2010

Date Decided:             July
20, 2010

 

Do Not Publish











[1]Butler v. State, 300 S.W.3d 474 (Tex.
App.––Texarkana 2009, pet. ref’d, untimely filed).

 





[2]Brady v. Maryland, 373 U.S. 83 (1963).





[3]See Gaines
v. State, No. 04-00-00050-CR, 2001 WL 99630, at *4 (Tex. App.—San Antonio
Feb. 7, 2001, pet. ref’d) (not designated for publication) (discussing proper
application of this concept, not cited for precedential authority).





[4]State v. Salazar, No. 05-08-01511-CR,
2009 Tex. App. LEXIS 5802 (Tex. App.—Dallas July 29, 2009, no pet.) (mem. op.,
not designated for publication) (mistaken understanding of the law cannot
provide justification for a traffic stop) (In an unpublished opinion, the
Dallas court also addressed this issue. 
Citation not cited for precedential authority.). 





[5]In
a thought-provoking series of arguments referencing authorities ranging from
Plato’s Republic and St. Augustine’s City
of God, to law review articles
discussing the injustice of permitting police officers to deceive their
subjects in interviews, counsel argues that it is, quite simply, wrong to allow
officers of the law to lie to those in their custody.  He argues that there can be “no sound,
ethical, justification for the forces of right, law and the good employing the
devices of subterfuge and lies—the devices and immoral ground of crime, the
very realm which the law and the good oppose.” 
See Miriam S. Gohara, A Lie for a Lie:  False Confessions and the Case for
Reconsidering the Legality of Deceptive Interrogation Techniques, 33 Fordham Urb. L.J. 791 (Mar. 2006);
Deborah Young, Unnecessary Evil, Police
Lying in Interrogations, 28 Conn. L.
Rev. 425 (Winter 1996).  We are
unconvinced that this situation involves such activities, and in any event, we
are bound under stare decisis to
apply the analysis and policies previously articulated by the courts of this
State.