

# NUMBER 13-20-00468-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                      Appellant,

v.

KRISTEN GAIL POWELL,                                                     Appellee.

## On appeal from the County Court at Law
## of Gillespie County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Chief Justice Contreras**

The State of Texas appeals the trial court's order granting appellee Kristen Gail Powell's motion to suppress evidence following a traffic stop. By four issues, the State argues that the trial court abused its discretion and committed reversible error when it ruled: (1) the officer did not have reasonable suspicion that appellee was violating Texas Transportation Code § 547.3215; (2) the officer lacked probable cause or reasonable

suspicion to conduct a traffic stop; (3) the officer made an error of law by stopping appellee based upon the lack of a working high center-mounted stop lamp on her car; and (4) the officer's error of law was not reasonable pursuant to *Heien v. North Carolina*, 574 U.S. 54, 60–63 (2014) (holding that reasonable suspicion, as required for a traffic stop, can rest on a reasonable mistake of law) (abrogating *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012) ("An officer's mistake about the law, or about the legal significance of undisputed facts, even if eminently reasonable, cannot serve to provide probable cause or reasonable suspicion.")). We reverse and remand.[1]

## I.    BACKGROUND

Appellee was charged by information with DWI on October 7, 2019. *See* TEX. PENAL CODE ANN. § 49.04. Appellee subsequently filed a motion to suppress all evidence obtained after the initial stop, arguing that the officer did not have reasonable suspicion to initiate the stop. An evidentiary hearing on the motion was heard on September 21, 2020.

Trooper Dominic Langford with the Texas Department of Public Safety was the State's sole witness at the suppression hearing. On the evening of February 23, 2019, Langford was patrolling on Main Street in the city of Fredericksburg. Langford's attention was first drawn to appellee's 2012 Nissan Sentra while he was near the intersection of Llano and East Main Street. Langford testified that he observed appellee's vehicle slow down to initiate a turn on to South Washington Street. Langford saw that the two side brake lights illuminated but the high center-mounted brake light did not. Langford's dash

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

camera also showed that only the two side-mounted brake lights were functioning on appellee's vehicle. As a result of this observation, Langford followed the vehicle more closely, and saw the vehicle turn right onto South Washington Street. When the vehicle was on South Washington, Langford again saw the two side brake lights come on, but the third or high center-mounted brake light did not illuminate. Langford then saw the vehicle turn right onto East San Antonio Street. Once Langford also made the same turn, he turned on his overhead lights and initiated a traffic stop of appellee's vehicle.

Langford testified that his reason for the traffic stop was "the defective third brake light, the center, high-mounted stop lamp." The trial court made a finding of fact that appellee's vehicle had two working stop lamps that night. Once the vehicle pulled over and stopped, Langford went up to the vehicle and saw that appellee was seated in the driver's seat and was the only person in the vehicle. Langford told appellee that the reason for the stop was that "the center-mounted, high stop lamp, the third brake light was not working." Langford testified that he previously stopped appellee's Sentra in 2018, and the car was also lacking a center-mounted brake light at that time. He agreed that he stops cars for missing a center-mounted brake light "all the time."

Appellee's counsel introduced as evidence a March 8, 2001 letter purportedly written by the acting chief counsel of the National Highway Transportation Safety Administration (NHTSA) and addressed to a trooper with the Utah Highway Patrol.[2] The letter states in part:

> Chapter 301 of Title 49, United States Code (the Act), authorizes NHTSA to issue safety standards for new motor vehicles and new motor vehicle equipment. All motor vehicles and items of motor vehicle equipment manufactured or imported for sale in the U.S. must comply with all applicable Federal Motor Vehicle Safety Standards (FMVSS) set forth in 49

---

[2] The State did not object to the admission of the letter into evidence.

CFR Part 571. . . .

Manufacturers, distributors, dealers, or motor vehicle repair businesses modifying a motor vehicle after its first retail sale are prohibited by 49 U.S.C. [§] 30122 from knowingly making inoperative any device or element of design installed on or in a motor vehicle or item of motor vehicle equipment in compliance with an applicable FMVSS. However, the "make inoperative" provision does not prohibit consumers from modifying their own vehicles, even if such modifications adversely affect the compliance of the vehicle with the FMVSS. Such modifications may, nevertheless, be regulated by State law.

The court granted the motion to suppress by written order on September 25, 2020.

The State filed its notice of appeal on October 9, 2020. Later, the trial court entered the following findings of fact pursuant to the State's request:

7.    Trooper Langford did not recognize the 2012 white Nissan Sentra as the specific 2012 Nissan Sentra stopped in 2018 . . . , nor the driver of the vehicle at the time he initiated his emergency lights.

8.    Trooper Langford knows, from his eight years of service and out of the thousands of cars that he has observed and stopped, that the 2012 Nissan Sentra is the only sedan that does not have a center-mounted stop lamp . . . .

10.   After the 2012 Nis[s]an and Trooper Langford's unit come to a stop, the trooper's dash cam video shows there is no casing for a "third" brake light on [appellee's car].

The court concluded that Langford made an error of law, that the error was not reasonable, and that he did not have reasonable suspicion that appellee violated § 547.3215 of the Texas Transportation Code. Additionally, citing the 2001 NHTSA letter, the court concluded that: "Neither Federal law nor safety standards do not [sic] prohibit an owner of a vehicle from modifying their own vehicle, even if the installation renders inoperative the compliance of the vehicle with an applicable safety standard."

## II.    MOTION TO SUPPRESS

In its first two issues, the State argues that the trial court erred in concluding that Langford did not have reasonable suspicion to initiate the traffic stop of appellee for a

4

violation of Texas Transportation Code § 547.3215.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We afford almost total deference to a trial court's determination of historical facts when supported by the record, but we review pure questions of law de novo. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). Likewise, we defer to a trial court's resolution of mixed questions of law and fact if those questions turn on the credibility and demeanor of witnesses. *Id.* However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *Id.*

When the trial judge makes express findings of fact, as here, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We uphold the ruling if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Thus, if supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

With respect to reviewing whether reasonable suspicion existed to support a stop or temporary detention of a motorist, courts are to apply a de novo standard of review. *State v. Martinez*, 570 S.W.3d at 281 (Tex. Crim. App. 2018) (citing *Crain v. State*, 315 S.W.3d. at 48–49 (Tex. Crim. App. 2010)). "We review de novo whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d. at 48–49. Under the de novo standard, the appellate court

accords no deference to the lower court's conclusions of law, but instead independently analyzes the relevant facts to arrive at its own legal conclusions. *Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017). An appellate court may substitute its own judgment regarding a conclusion of law by the trial court. *See id*; *see also Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1990).

## B.      Reasonable Suspicion

The Fourth Amendment to the United States Constitution and Article I, § 9 of the Texas Constitution guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. When a law enforcement officer stops a driver, the temporary detention is lawful only if the officer has reasonable suspicion that the driver is violating the law. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Ford v. State*, 158 S.W. 3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). We consider the totality of the circumstances when making a reasonable-suspicion determination. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007). Reasonable suspicion "is an objective [standard] that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Derichsweiler*, 348 S.W.3d at 914; *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). "For a peace officer to stop a motorist to investigate a traffic infraction, 'proof of the actual commission of the offense is not a requisite.'" *Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (quoting *Drago v. State*, 553 S.W.2d. 375, 377 (Tex. Crim. App. 1997)).

6

"The State is not required to show a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress." *State v. Daniel*, 446 S.W.3d 809, 813 (Tex. App.—San Antonio 2014, no pet.); *accord Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

## C. Analysis

The issue in this case is whether Langford had reasonable suspicion to initiate a traffic stop of appellee on February 23, 2019. In Texas, it is a misdemeanor offense for a motorist to operate a vehicle in violation of the equipment requirements established by state law. TEX. TRANSP. CODE ANN. § 547.004(a)(2). The transportation code requires that a motor vehicle be equipped with "at least two stoplamps." *Id.* § 547.323(a). This section of the code is supplemented by § 547.3215, which states that lighting equipment on a vehicle must meet the current federal standards set forth in title 49, § 571.108 of the Code of Federal Regulations, "unless specifically prohibited" by Chapter 547 of the transportation code. *Id.* § 547.3215. Under the federal regulations, passenger vehicles that are less than 2,032 millimeters or eighty inches in overall width and have a gross vehicle weight rating of 10,000 pounds or less are required to be equipped with a third or high center-mounted stop lamp. 49 C.F.R. § 571.108, S6.1.1, S7.3.1, Table I-a.[3] The federal standards state that the high, center-mounted stop lamp must illuminate when the brakes are applied or used. 49 C.F.R. § 571.108, S7.3.1, Table I-a.

In its conclusions of law, the trial court determined that Langford did not have reasonable suspicion that appellee was violating Texas Transportation Code § 547.3215 by not having a high center-mounted stop lamp on her 2012 Nissan Sentra. *See* TEX.

---

[3] It is undisputed that appellee's car is under eighty inches in width and has a gross vehicle weight of under 10,000 pounds.

7

TRANSP. CODE ANN. § 547.3215. The record shows that the sole reason Langford initiated the stop of appellee was due to his observation that her vehicle did not have a working center-mounted brake light that night. The State challenges the trial court's finding, contending that Langford did have reasonable suspicion to initiate the traffic stop due to the requirement of three working brake lights and his observation that appellee was in violation of Texas Transportation Code § 547.3215. We agree with the State.

Several Texas appellate courts have ruled that a law enforcement officer who observes a vehicle without three working stop lamps has reasonable suspicion for a traffic stop. *Saenz v. State*, 564 S.W.3d 469, 473–74 (Tex. App.—El Paso 2018, no pet.); *Schwintz v. State*, 413 S.W.3d 192, 193 (Tex. App.—Beaumont 2013, pet ref'd); *Garza v. State*, 261 S.W.3d 361, 368-69 (Tex. App.—Austin 2008, pet. ref'd); *see State v. Varley*, 501 S.W.3d 273, 281 (Tex. App.—Fort Worth 2016, pet. ref'd) (stating that "if [§] 547.3215 had been relied upon by the officer and argued in the trial court, it would have made [the] traffic stop abundantly reasonable"); *see also Morin v. State*, No. 07-14-00101-CR, 2015 WL 7231100 at *3 (Tex. App.—Amarillo Nov. 16, 2015, no pet.) (mem. op., not designated for publication); *Starrin v. State*, No. 02-04-00360-CR, 2005 WL 3343875, at *1 (Tex. App.—Fort Worth Dec. 8, 2005, no pet.) (mem. op., not designated for publication) ("Federal standards require passenger cars less than eighty inches wide to have three stoplamps on the rear of the car—one on each side of the car's vertical midline, at the same height, and as far apart as practicable, and one high-mounted on the midline."). Appellee argues that these cases are distinguishable because most deal with a side rear stop light being inoperable, as opposed to the third high center-mounted stop light being inoperable. However, at least one court has specifically stated that reasonable suspicion exists when a person operates a vehicle "without an operational high-mounted center

8

taillamp." *Morin*, 2015 WL 7231100, at *3. In any event, these cases all hold that § 547.3215 of the Texas Transportation Code requires that all passenger vehicles of this type have three functioning brake lights on the rear of the car. Thus, it was objectively reasonable for Langford to conclude that appellee was in violation of the Texas Transportation Code.

Appellee argues that she was in compliance with the transportation code because at the time of the stop, her vehicle had two functioning stop lights on the rear of her car. Appellee asserts that the federal regulations' requirement of the third high center-mounted stop light is inconsistent with §§ 547.323 and 547.327 and therefore may not be adopted. *See* TEX. TRANSP. CODE ANN. § 547.101(d) ("The department may not adopt a vehicle equipment standard inconsistent with a standard provided by this chapter."). We find two problems with this argument. First, appellee's assertion that the regulation is inconsistent with § 547.327 is incorrect. Section 547.327 deals with "spotlamps," as opposed to what is at issue in this case, "stoplamps." *Compare id.* § 547.323 (requiring at least two stoplamps) *with id.* § 547.327(a) ("A motor vehicle may be equipped with not more than two spotlamps."). Since "spotlamps" are not at issue in this case, we find § 547.327 to be irrelevant to its disposition. Second, appellee asserts that because she was not actually committing a violation of the code, Langford lacked reasonable suspicion to initiate a traffic stop. However, as discussed above, appellee was in violation of § 547.3215 for operating her vehicle without a functioning third high center-mounted stoplight. Additionally, the question in this case is not whether the appellee was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was. *See Jaganathan v. State*, 479 S.W.3d 247 (Tex. Crim. App. 2015); *Garcia*, 43 S.W.3d at 530;

*Fisher*, 56 S.W.3d at 163.[4] It is undisputed that Langford witnessed appellee operating her vehicle without a functioning third high center-mounted brake light prior to initiating the stop.

We conclude the record supports a finding that Langford had sufficient reasonable suspicion to initiate the traffic stop of appellee's vehicle. A reasonable officer in Langford's position could have believed that the absence of the third high center-mounted brake light was sufficient to initiate a traffic stop.[5] We sustain the State's first two issues.[6]

### III.    CONCLUSION

Considering the totality of circumstances, we find that the trial court erred when it ruled that Langford did not have reasonable suspicion to initiate a traffic stop of appellee. This ruling led to an improper granting of appellee's motion to suppress. We reverse the trial court's granting of appellee's motion to suppress and remand the case back to the trial court with instructions to deny the motion to suppress and for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of June, 2021.

---

[4] The record is silent as to whether appellee modified or repaired her 2012 Nissan Sentra, and the trial court made no finding on that issue. Appellee does not argue on appeal that her car is exempt from the federal safety standards because it was modified.

[5] The trial court's finding that "Trooper Langford knows . . . the 2012 Nissan Sentra is the only sedan that does not have a center-mounted stop lamp" is unsupported by the record. In any event, even if Langford believed that this particular vehicle model typically lacked this safety feature, the statute still requires it, and operating a vehicle without it is a crime. *See* TEX. TRANSP. CODE ANN. § 547.004(a)(2).

[6] Because we sustained the State's issues one and two, we need not address its third and fourth issues, dealing with whether Langford made a reasonable mistake of law. *See* TEX. R. APP. 47.1.

10