# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00104-CR

**Colette Elaine Michalec, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. C-1-CR-09-221194,
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The opinion and judgment issued herein on March 6, 2013, are withdrawn, and the following opinion is issued in lieu thereof. Appellant's motion for rehearing is overruled.

A jury convicted appellant Colette Michalec of the Class B misdemeanor offense of interference with the duties of a public servant. *See* Tex. Penal Code Ann. § 38.15 (West 2011). The trial court assessed her punishment at confinement for 14 days in the county jail. *See id.* § 12.22 (West 2011). Appellant argues five points of error on appeal complaining about the denial of her motion to dismiss, the denial of her motions to suppress, a denial of due process, and insufficient evidence. We affirm the judgment of conviction.

## BACKGROUND

In accordance with this Court's duty to view the evidence in the light most favorable to the verdict, we set forth the following evidence heard by the jury: On November 30, 2009, Officer Robert Pfaff, a patrol officer with the Austin Police Department ("APD"), was on night-shift duty in East Austin. In the course of a normal shift, APD officers often run license plate numbers through the Department of Public Safety ("DPS") database to gather information on possible criminal activity, ranging from expired registrations to stolen vehicles. At approximately 8:40 p.m., Officer Pfaff ran the license plate number of a Mazda traveling westbound on Braker Lane. The information he received indicated that the Mazda's registration had expired. Pursuant to his normal routine under those circumstances, Officer Pfaff decided to pull the car over to investigate.

However, the Mazda did not pull over when Officer Pfaff activated his overhead lights, but simply continued driving. Even when the officer briefly activated his siren, the driver still did not immediately pull over. Moreover, as the Mazda kept driving, the officer noticed what he believed to be furtive movements inside the car, as though the occupants were trying to hide something under the seat—something he feared might prove a threat to his or the public's safety. Eventually, the Mazda stopped in the parking lot of a Walgreens Pharmacy. Based on prior experience, Officer Pfaff was apprehensive and cautious about this particular traffic stop. He got out of his patrol car and approached the driver's side of the Mazda, positioning himself so as to best protect himself if the driver proved to be armed.

As Officer Pfaff approached the Mazda, the driver requested to see his identification, an unusual request that further increased the officer's anxiety and safety concerns. Officer Pfaff

2

nevertheless complied with the driver's demand and showed him his APD departmental identification. Officer Pfaff then asked the driver to get out of the car, his intention being to conduct a weapons frisk for safety. The driver did not comply with the officer's repeated instructions to exit the car. During the exchange, Officer Pfaff noticed a leather satchel resting on the driver's lap. At one point, he saw the driver's hands move from the steering wheel toward the satchel. Fearing that the satchel might contain a weapon and feeling a significant threat to his safety, Officer Pfaff reached through the window to secure it. In response, the driver grabbed the officer's arms. The two then wrestled over the satchel. Finally, to secure the situation and the driver, Officer Pfaff opened the car door, unbuckled the driver's seatbelt, and forcibly removed him from the car, requesting backup assistance as he did so. As the officer wrestled the driver out of the car, the satchel landed on the driver's seat.

Appellant was the passenger in the Mazda. While Officer Pfaff struggled with the driver, appellant got out of the car, walked around to the driver's side, came up behind the officer, and began yelling at him as he tried to contain the situation. After handcuffing the driver, Officer Pfaff was still concerned that the satchel's contents could pose a threat. He reached to secure the leather satchel, which was sitting on the driver's seat, but appellant, who had returned to the passenger's side of the car, reached across the center console, snatched it from his grasp, and fled toward the Walgreens. Officer Pfaff instructed her to stop, but she ignored his instruction, commenting, "What are you going to do?"

Backup officers arrived as Officer Pfaff was placing the handcuffed driver into his patrol vehicle. One of the backup officers found appellant inside the Walgreens store on her cell

3

phone, still speaking with a 911 operator.[1] That officer then handcuffed appellant and frisked her for weapons. Another officer took the satchel from appellant. The satchel was later found to contain personal items of the driver, including his identifying information and his concealed handgun permit.

After her arrest, appellant refused to divulge her identity or provide any identifying information. Police tried for over an hour to discover her identity, finally taking her to the main police station for fingerprinting. Appellant refused to cooperate with the fingerprinting procedure. To avoid any escalated violence, appellant was transported to the jail. Once there, jail personnel were able to obtain her fingerprints but unable to identify her from them. Police finally determined appellant's identity by calling family members after retrieving the phone numbers from her cell phone.

Appellant was subsequently charged by information with interfering with the duties of a public servant and evading arrest. At trial, the jury convicted appellant of interfering with the duties of a public servant but acquitted her of the evading-arrest charge. Punishment was to the court, and the trial judge sentenced appellant to serve 14 days in the county jail. This appeal followed.

## DISCUSSION

On appeal, appellant contends that the trial court erred in denying her motion to dismiss and her motions to suppress. She further argues that the trial court's ruling quashing her

---

[1] The evidence showed that once Officer Pfaff signaled the Mazda to pull over, appellant called 911 on her cell phone to complain of harassment by a police officer.

4

subpoena duces tecum denied her due process. Finally, she complains that the evidence is insufficient to support her conviction.

## Motion to Dismiss

In her first point of error, appellant asserts that the trial court lacked subject-matter jurisdiction over her case and thus erred in denying her motion to dismiss.

"An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense." Tex. Const. art. V, § 12(b); *see* Tex. Code Crim. Proc. Ann. art. 21.20 (West 1989). "The presentment of an . . . information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b); *see Aguilar v. State*, 846 S.W.2d 318, 320 (Tex. Crim. App. 1993). County courts have subject-matter jurisdiction over misdemeanor offenses. Tex. Code Crim. Proc. Ann. art. 4.07 (West 2005).

Appellant was charged by information, filed by the county attorney, with the misdemeanor offense of interference with the duties of a public servant. *See* Tex. Penal Code Ann. § 38.15. Thus, the trial court had subject-matter jurisdiction in this case and did not err in denying appellant's motion to dismiss. We overrule her first point of error.

## Motions to Suppress

In her next two points of error, appellant complains about the denial of her motions to suppress. In her second point of error, she maintains that the traffic stop was unreasonable because the DPS check on the Mazda's license plate was an unreasonable search and seizure that violated her expectation of privacy in the license plate number and thus the trial court should have

suppressed the evidence flowing from the detention of the car. In her third point of error, appellant contends that Officer Pfaff conducted an illegal search when he opened the door and attempted to seize the satchel on the driver's lap and consequently the trial court should have suppressed any evidence obtained after the officer opened the door.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The trial court's ruling on the motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We afford almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of the credibility and demeanor of witnesses. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnson*, 336 S.W.3d at 657;

6

*Guzman*, 955 S.W.2d at 89. All purely legal questions are reviewed de novo. *Johnson*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Johnson*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.).

Appellant contends in her second point of error that Officer Pfaff did not have reasonable suspicion or probable cause to run a check on the Mazda's license plate and thus doing so constituted an illegal search and seizure. Accordingly, she contends the trial court erred in denying her first motion to suppress. The State argues that appellant lacks standing to complain about a purported search in conducting a DPS database check of the Mazda's license plate because she had no reasonable expectation of privacy in the license plate on a vehicle owned by someone else.[2]

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals against unreasonable searches and seizures. *See*

---

[2] We observe that the State did not raise appellant's lack of standing to the trial court at the suppression hearing, but only raises it for the first time on appeal. Because standing is an element of a claim of unlawful search and seizure, however, the State may raise the issue of standing for the first time on appeal, regardless of whether the defendant's motion to suppress was granted or denied and even when the record does not reflect that the issue was ever considered by the parties or the trial court. *State v. Klima*, 934 S.W.2d 109, 110–11 (Tex. Crim. App. 1996).

U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008). A car license plate exposed to public view is not within an area where a person has a reasonable expectation of privacy; thus, running a DPS database check on a license plate number does not constitute a search. *See Wood v. State*, 632 S.W.2d 734, 741–42 (Tex. Crim. App. 1982) (adopting and applying reasoning and holdings of Fifth Circuit decisions that car inspections performed by police officers, who were entitled to be on property where cars were located, which in no way damaged cars, and were limited to determining cars' correct identification numbers, were not searches within meaning of Fourth Amendment); *Turner v. State*, 05-99-01246-CR, 2000 WL 1702677, at *1 (Tex. App.—Dallas Nov. 15, 2000, no pet.) (mem. op., not designated for publication). Consequently, Officer Pfaff did not need to have reasonable suspicion or probable cause to run the Mazda's license plate number.

Furthermore, the rights secured by the Fourth Amendment and Article I, Section 9 are personal. *Emack v. State*, 354 S.W.3d 828, 834 (Tex. App.—Austin 2011, no pet.); *see Rakas v. Illinois*, 439 U.S. 128, 139 (1978); *Richardson v. State*, 865 S.W.2d 944, 948–49 (Tex. Crim. App. 1993). A defendant seeking to suppress evidence on the ground that it was obtained in violation of the Fourth Amendment or Article I, Section 9 must show that he personally had a reasonable expectation of privacy that the government violated. *Emack*, 354 S.W.3d at 834; *see Rakas*, 439 U.S. at 139–40; *Handy v. State*, 189 S.W.3d 296, 299 (Tex. Crim. App. 2006); *see also Kothe*, 152 S.W.3d at 59 (standing under Fourth Amendment); *Richardson*, 865 S.W.2d at 948–49 (standing under Article I, § 9); *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995) (standing requirement

8

of Article 38.23, Texas's statutory exclusionary rule). The defendant bears the burden of demonstrating standing to challenge the legality of the search by showing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1992).

In considering whether an appellant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including whether: (1) the defendant had a property or possessory interest in the place invaded; (2) he was legitimately in the place invaded; (3) he had complete dominion or control and the right to exclude others; (4) prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy. *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138. This list of factors is not exhaustive, nor is any one factor dispositive of an assertion of privacy. *Granados*, 85 S.W.3d at 223; *Villarreal*, 935 S.W.2d at 138–39. In the present case, the record reflects that the Mazda's license plate was exposed to public view as the car traveled on a public roadway. Further, appellant was not the owner of the vehicle but merely a passenger. Based on the factors present here, appellant has failed to demonstrate that she had a reasonable and legitimate expectation of privacy in the Mazda's license plate number.

We hold that conducting a DPS database check of the Mazda's license plate did not constitute a search or seizure for Fourth Amendment purposes. We further hold that appellant lacks standing to complain about the registration check of the Mazda's license plate number because she

9

had no reasonable and legitimate expectation of privacy therein. Accordingly, the trial court did not err in denying her first motion to suppress. We overrule appellant's second point of error.

In her third point of error, appellant argues that Officer Pfaff conducted an illegal search of the driver when he opened the door and attempted to seize the satchel on the driver's lap. Thus, she maintains, the trial court erred in denying her second motion to suppress and should have suppressed: (1) evidence of her identity, (2) any statements that she made, and (3) any subjective conclusions Officer Pfaff made about his encounter with appellant.[3]

If an officer has a reasonable belief that a citizen may be armed, a limited patdown of that citizen is permissible for the officer's safety and for the safety of others. *State v. Castleberry*, 332 S.W.3d 460, 469 (Tex. Crim. App. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (quoting *Terry*, 392 U.S. at 27). Furthermore, an officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002). Here, based on the behavior of the driver and the conduct of both occupants in the car, the trial court could reasonably have concluded that Officer Pfaff had a reasonable concern that the satchel the driver was

_____

[3] Appellant fails to identify in her brief any statements that she made subsequent to the officer's complained-of conduct. Thus, this portion of her complaint is inadequately briefed and presents nothing for our review. *See* Tex. R. App. P. 38.1(i); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) (failure to adequately brief issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal); *Aldrich v. State*, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996); *see also Leza v State*, 351 S.W.3d 344, 358 (Tex. Crim. App. 2011).

reaching for contained a weapon. Thus, he was authorized to conduct a patdown of the driver and satchel. We conclude that Officer Pfaff's conduct in securing the driver and satchel for a safety frisk and weapons search did not constitute an illegal search or seizure. Accordingly, we hold that the trial court did not err in denying appellant's second motion to suppress. We overrule appellant's third point of error.

**Denial of Due-Process Claim**

In her fourth point of error, appellant asserts that her constitutional right to due process was violated when the trial court granted the City of Austin's motion to quash her subpoena duces tecum for records from the City of Austin Office of Police Monitor. Apparently, appellant was attempting to obtain records related to an internal affairs investigation in connection with complaints she had made against the officers involved in her arrest. The City Attorney moved to quash the subpoena, asserting that the records were privileged personnel files of police officers. *See* Tex. Loc. Gov't Code Ann. § 143.089(g) (West 2008). At trial, appellant argued that she was entitled to the subpoenaed records under the public information act, citing two sections of the Texas Government Code. *See* Tex. Gov't Code Ann. §§ 552.001, .002 (West 2012). She also briefly referenced article 1.05 of the Texas Code of Criminal Procedure, the statutory provision setting forth, generally, the rights of a criminal defendant. *See* Tex. Code Crim. Proc. Ann. § 1.05 (West 2005). Appellant now asserts on appeal that the trial court's ruling quashing the subpoena for the internal affairs records violated her constitutional right to due process by violating her right to compulsory process. *See* U.S. Const. amends. VI, XIV.

11

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532). To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). Even constitutional rights—including the right of due process and due course of law—may be waived if the proper request, objection, or motion is not asserted in the trial court. *Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002); *see Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). Therefore, with limited exceptions not applicable here, if a party fails to properly object to constitutional errors at trial, these errors are forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citing *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)). Confrontation and compulsory process rights are subject to procedural default. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). In addition, the point of error on appeal must comport with the objection made at trial. *Clark*, 365 S.W.3d at 339 (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)).

At trial, appellant did not assert entitlement to the internal affairs records on any constitutional grounds, nor did she assert that the failure to produce such violated her rights to due process or compulsory process. While she generally referenced article 1.05 of the code of criminal

12

procedure and used the phrase "rights of the accused," she never mentioned her right to compulsory process—statutory or constitutional—to the trial court.[4] Rather, her argument to the court centered on the Public Information Act and "open government." Thus, contrary to her contention, appellant did not provide the trial court notice that she was complaining about the denial of either her right to compulsory process or her right to due process. Accordingly, she did not preserve for appellate review her present complaint regarding the trial court's ruling quashing the subpoena duces tecum. We overrule her fourth point of error.

**Sufficiency of the Evidence**

In her final point of error, appellant challenges the sufficiency of the evidence to support her conviction.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine

---

[4] Article 1.05 includes, among other rights, an accused's statutory right to compulsory process:

> In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself. He shall have the right of being heard by himself, or counsel, or both; shall be confronted with the witnesses against him, and shall have compulsory process for obtaining witnesses in his favor. No person shall be held to answer for a felony unless on indictment of a grand jury.

Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005).

13

whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 36.13 (West 2007), art. 38.04 (West 1979). Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). The standard of review on appeal is the same for both

direct-evidence and circumstantial-evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

In a series of conclusory statements, appellant asserts that the evidence was legally insufficient to support her conviction because the State failed to: (1) offer evidence showing that she acted with criminal negligence, (2) provide evidence of Officer Pfaff's duty, (3) show that the officer was legally justified in conducting a search for weapons, (4) offer eyewitness testimony corroborating Officer Pfaff's testimony that she snatched the satchel from him, or (5) show that Officer Pfaff conveyed to her his intent for the traffic stop.[5]

The dispositive issue, however, is not the nature or existence of particular evidence that the State did *not* produce, but whether the evidence the State did produce at trial sufficiently proved all the elements of the offense. Tracking the statutory language of the penal code, the charging instrument here alleged that appellant

> did then and there with criminal negligence, interrupt, disrupt, impede, and otherwise interfere with a peace officer, to wit: R. Pfaff, while the peace officer was performing a duty and exercising authority imposed and granted by law, to wit: R. Pfaff was attempting to search another party for weapons, and the Defendant pulled a satchel out of the hand of the Officer, impeding R. Pfaff's ability to complete the search of the other party.

*See* Penal Code § 38.15(a)(1).

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to

_____

[5] Also in this point of error, appellant complains about purported defects in the complaint filed by the State. These complaints are not relevant to the issue of sufficiency.

be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d) (West 2011). Thus, the evidence must show that appellant ought to have been aware that her actions (snatching the satchel from Officer Pfaff) created a substantial and unjustifiable risk of impeding Officer Pfaff's performance of an official duty (conducting a weapons search for safety), and, if so, whether her failure to perceive that risk was a gross deviation from the standard of care that an ordinary person would have exercised under the circumstances as viewed from appellant's standpoint.

Officer Pfaff testified that part of his duties as an APD officer included crime-prevention patrol, which included running license-plate registration checks. When the officer discovered that the Mazda had an expired vehicle registration, he made the decision to investigate. At the time of the traffic stop, Officer Pfaff was on duty, in a marked patrol vehicle, and wearing his police uniform complete with his police badge. Further, the officer had to activate the siren on his police car in order to get the driver to stop. Finally, when Officer Pfaff made contact, at the driver's request, he showed his police identification.

The officer testified that he had the authority to conduct a patdown of people for weapons during a traffic stop, and that he did so routinely. *See Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (valid investigative detention can confer authority for officer to patdown suspect for weapons); *Balentine*, 71 S.W.3d at 769 (once suspect lawfully detained, officer may conduct limited search for weapons, or "protective frisk," when reasonably warranted for officer's

16

safety and safety of others); *see also Castleberry*, 332 S.W.3d at 469. Here, the driver and appellant were lawfully detained for investigation of the expired registration sticker. *See* Tex. Transp. Code Ann. § 502.407 (West Supp. 2012) (operating motor vehicle that has not been registered as required by law constitutes traffic violation); *Garza v. State*, 261 S.W.3d 361, 367 (Tex. App.—Austin 2008, pet. ref'd) (police officer may stop automobile when officer has reasonable suspicion to believe traffic violation has occurred). Based on the conduct observed—the driver's initial failure to stop, what Officer Pfaff perceived as furtive movements of the occupants of the car, and the driver's behavior upon contact—the officer had concerns about his own safety and the safety of the general public at Walgreens. When the officer saw the already uncooperative and arguably combative driver reaching for the satchel on his lap—a satchel large enough to conceal a weapon—he reasonably believed it necessary to conduct an immediate protective frisk for safety and a search for weapons. To perform this duty, the officer attempted to secure the driver and the satchel. *See Balentine*, 71 S.W.3d at 771 (officer may use reasonably necessary force to effect goal of stop: investigation, maintenance of status quo, or officer safety). The record reflects that throughout this encounter, Officer Pfaff repeatedly instructed the driver to exit the car, his intent being to search for weapons.

During the officer's struggle with the driver over the satchel, appellant exited the vehicle, walked around the car, approached the officer from behind, and began yelling at him. At this point, Officer Pfaff's safety concerns increased still further, prompting him to repeat his call for backup, requesting immediate assistance. As the officer managed to subdue the driver, appellant went back around to the passenger side, leaned across the center console, and removed the satchel from the driver's seat as Officer Pfaff attempted to secure it. Appellant then ignored the officer's

17

instruction to stop and fled into Walgreens with the satchel. The dash-cam video from Officer Pfaff's patrol vehicle was admitted into evidence and played for the jury. Thus, although the camera was not positioned to capture much relevant video footage, the jury was able to hear most of the audio recording of the encounter between the officer and appellant.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant acted with criminal negligence to impede Officer Pfaff's ability to conduct a safety frisk and weapons search of the driver and satchel. We therefore hold that the evidence is sufficient to support appellant's conviction and overrule her final point of error.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed on Motion for Rehearing

Filed: May 24, 2013

Do Not Publish

18